Good morning. Good morning. Barry Green for the school district. May it please the court. The legislature, in the context of juvenile hall, which is essentially jail for minors, they made a decision that the county would be responsible for providing services there. In the context of hospitals, they said,  in both of those instances, it's clear that the problem would have been if you take any other approach, you'd have many, many school districts coming into the same jurisdiction and trying to service students. In this instance, for example, in jail, you could have dozens of school districts coming in and serving students. And so the statute itself doesn't say anything about jail whatsoever. The plaintiffs, to their credit, I mean, in this case, I understand Mr. Garcia just wanted to give his services. I mean, it's not like he didn't care. Is it the state? Is it the school? If he just wants to get his services, everybody agreed that he was entitled to the services. No one wants to pay for them, though. Exactly right, Your Honor. Exactly right. And, you know, to be honest, Your Honor, L.A. Unified is the only agency that's stepped up to the plate and has actually provided services. Not only Mr. Garcia. While this is all getting worked out, it's been providing services to all the students in the jail while this is getting sorted out. Counsel, he is currently getting services. Is that correct? Well, actually, he was. He got all of his services, but then he was convicted of attempted murder. And so then he went to prison, and now he's in prison. So he got all of his services, and he's done in terms of that. But, again, as I was saying, what was interesting about this case is, ironically, the plaintiffs had it right to begin with. They didn't even name L.A. Unified in the first case in the due process hearing. What happened was, they got the runaround. They went and filed for due process. What happened? CDE, the California Department of Education, on its own, opened its own compliance complaint. And on its own, miraculously found, well, they're not liable. Then their agent, the Office of Administrative Hearings, they said, oh, yeah, yeah, the state's right. They're not responsible. We weren't part of the case. So the state points to the empty seat and says, yeah, it's L.A. Unified's fault. Again, to the plaintiff's credit, they didn't immediately turn around and add L.A. Unified to a due process hearing. They went straight to district court because they knew it was ridiculous. They knew it couldn't have been. It had to have been the state. It was an oversight. But the district court said, we didn't exhaust administrative remedies. We've got to go back and add L.A. Unified. Went back, added L.A. Unified. We went back to due process. OAH, again, said L.A. Unified is responsible. And then the district court affirmed on appeal. Now, of course, again, I don't blame Mr. Garcia. He says, oh, he wants to protect the judgment, and they're protecting the judgment. Meanwhile, he has a class action pending also where, again, they're trying to go after the whole system, which was the original goal of Mr. Garcia. There's a problem. No one's being served in jail. We want to solve the problem. This court can solve the problem. It's very easy. The most deferential thing this court can do is tell the State of California, do whatever you'd like, just do something. And you haven't done it. And we know they haven't done it because the statute, 56041, only came into play in 1993. Can I ask you procedurally how this case got here? Yes. There was a hearing before the California Office of Administrative Hearings. Is that right? That's correct. And they ruled in favor of the district paying the bill. Correct. Okay. Then how does that get to federal court? What happens is under the I.D.A., due process hearings are reviewable in district court on appeal. Actually, they're reviewable at any court of competent jurisdiction, but typically they go to district court. So here we are, a federal court interpreting California law. That's correct. I'm wondering, it sounds like if this is the course these things are always going to take, we're always going to have federal courts interpreting California statutes. Would this be an appropriate vehicle for certification? Let the California Supreme Court pass on California law? If it's not likely, it will ever go to state court? It's possible, Your Honor. That would be one potential approach. From our perspective, whether it's this court that says, State of California, you need to do something, or the Supreme Court who does it, yes, it is a possibility to do that. I would agree. Because a lot of times we get these cases and, you know, it's just a happenstance that it comes to us instead of the state court. But it sounds like this is always going to be the case. It will be the expositor of state law. That's true, Your Honor. There are other instances, for example, the Weiner v. Manhattan Beach case, where the court had to construe California statutes and it's done so. And C.D. in their amicus brief tried to argue that 11th Amendment immunity precludes the court from construing the California statutes. But that's not supported. It's not really a federal question at all under the IDEA. Everyone agrees their services are required under the IDEA. That's true, Your Honor. It's a state court issue. But so back to the point here. So they, you know, they then took the case back to O.H., again, rubber stamp by O.H., and then, you know, now we're back where we were. Counsel, what's wrong with the district court's decision that the L.A. school district should bear the cost? What's wrong with that decision? We think it's not a good reading of the statutory framework. We think what really happened, and this was expressed in a moment of candor by the counsel for the C.D.E., that what really happened is they overlooked this issue. Nobody's gotten services in jail ever before Mr. Garcia asked for it. And the statute doesn't reference jails. And this is what would happen if we actually construed it the way they're proposing. You have dozens of school districts in any given county. They could be you could have a student who lives in San Diego who gets arrested in Sacramento. Next thing you know, you've got the San Diego school district trying to provide services in Sacramento. It's not a workable arrangement. Here, just alone in the county, you could have 20, 30, 40 school districts on a given day knocking on the door asking to provide services. I don't know what the county would do. I mean, the county in the class action has tried to be helpful, but it's an unworkable structure. I think what they would have done had they not overlooked it is they probably would have assigned it to either the county jails or to the county office of education, or they might even say whatever district the jail was located in. That's most likely what the solution would be. It's disappointing that the legislature hasn't turned around and simply fixed the problem. It's so easy for them to do, and as I said, the most deferential thing this court could do would be to say, look, we don't care what you do, just do something. They're not a party, though. Pardon? They're not a party, but they are a party to the class action, and frankly, I think, and I'm going to try to save some time for rebuttal, I don't agree that they have any kind of collateral estoppel risk due to COTA. That's just a game. I mean, Garcia has been run around. He files an OAH. They dismiss it on exhaustion. It goes to district court. They dismiss it on exhaustion. That's not collateral estoppel. I think what happens ultimately is the state gets responsible. They can decide what they want, and they can have the whole legislative process intervene. With your permission, I'd like to reserve the rest of the rebuttal. Thank you very much. Thank you. Good morning. Good morning. May it please the court, Shauna Parks with the Disability Rights Legal Center for appellee Michael Garcia. As we just heard from counsel for LASD, remarks about what could have been done, what should have been done, what might have been done, but I think here in this appeal, we have to look at what was actually in place in the statutes at the time Mr. Garcia was requesting services. And appellee Michael Garcia, as a student with significant learning disabilities, was one of the young adults who the Individuals with Disabilities Education Act clearly says is entitled to receive these special education services even while they're detained in adult correctional facilities, including county jails. And at this point, no one disputes that fact. I think we just heard from counsel for LASD that everybody agrees Mr. Garcia was entitled to receive services during his more than two years in the Los Angeles county jail system. So the only question on this appeal is whether the Los Angeles Unified School District is a responsible district for the direct provision of services to Mr. Garcia. And the Individuals with Disabilities Education Act, which I'll refer to from now on as the IDEA, and its implementing California statutes answer this question pretty plainly. The IDEA leaves it to the states to determine the responsibility for providing services, and that's why we're all here in federal court today interpreting California statutes. And here, California enacted Education Code 56041, which pretty plainly states that for young adults, responsibility falls to the district in which the parents reside. And it's true that the California legislature enacted a number of exceptions to this rule, some of which are articulated in Education Code 48204. But none of these exceptions address adult students in county jails. So when there's a general rule and we have exceptions, but none of those exceptions apply, then the general rule controls. And moreover, this rule fits within California's overarching scheme, which basically says that regardless of the student's age, you look first to determine responsibility for provision of services to the district of the parents' residence. And this is also the rule that's articulated in Education Code 48200 for students who are between the ages of 6 and 18. Can I ask you a similar question I asked Mr. Green? What do you make of the idea that this is an open question of California law that is not likely to be addressed by the California courts unless we were to certify the question to California? I think that's absolutely true. This is a case of first impression at the Ninth Circuit. The court can certainly certify a question to the California Supreme Court. I would inform the court that the Ninth Circuit in the Orange County versus California Department of Education case, which is also currently pending at the Ninth Circuit, did certify a question to the California Supreme Court on a similar type of California statutory interpretation. And the California Supreme Court declined to accept the question. But I certainly think that it's an approach that is open to the court here. And actually, what I would like to do is... This is a question, too, that's going to recur, right? I mean, it will be not just in this district, but other districts where there's county jails. Absolutely. This is a question that has statewide implications, and it has implications in every county jail system throughout the state and for every school district throughout the state, absolutely. And what I'd like to do is give the court just a little bit of context, actually, about how that system would work, because I think it's informative in the context of this appeal. Because even though this appeal deals with a specific student, Mr. Garcia, the Los Angeles Unified School District has raised some practical concerns about how this would actually play out in practice. And as we've made clear in our papers, to say that the LAUSD is a responsible district for the direct provision of services to Mr. Garcia is not to say that they are the only agency with responsibility for Mr. Garcia's education. And there are a number of other organizations, a number of other entities in the state of California that have overlapping obligations. And the first and foremost amongst these is the California Department of Education, which must ultimately ensure compliance with the IDEA and also has substantial monitoring and oversight responsibilities. Now, the extent of what we believe in the CDE's failure in this regard is part of the subject of the class action that's currently pending at the district court. But what I do want to point out is that the CDE can set up a number of frameworks in the state of California to address some of the practical concerns that have been raised by the LAUSD. Can I ask you another question? Sure. Mr. Green said that Mr. Garcia is now not their problem anymore. He's in the state prison. He's currently in prison, sure. Do they owe him any money to anybody? Well, I would say two things in response to that. First, the OAH decision specifically said that they were only obligated, the LAUSD was only obligated to provide services until Mr. Garcia transferred out of the jail one way or another. Which they did. They did starting in January of 2010 through his departure from the jail. I guess this is my roundabout way of asking you if this is moot now. I don't think it's moot for two reasons. One is that based on what happens in this appeal, there will be a claim for attorney's fees on Mr. Garcia's behalf in the district court. And second, to the extent that this court should decide something contrary to what the district court or the OAH provided, it could be that LAUSD might have a claim against some other district, some other educational agency for the services it did provide to Mr. Garcia. So I think there's very much a live claim there. Well, I'm not sure. I think the law is that the attorney's fees issue doesn't make something that's moot not moot. Well, is this a case where it's likely to recur? We also have an exception for mootness for that. That's true. I do think it's absolutely a situation that's likely to recur. Mr. Garcia is a bit of an outlier given the amount of time he spent in the Los Angeles County Jail. The more typical timeframe for stays in the Los Angeles County Jail is in the mid-15-day range for the most part. So there are students who cycle in who would be entitled to services who may not have the opportunity or the time to bring even a due process proceeding, much less a federal case. Let me ask another question on that. You said that they started providing services at a particular point. Are you claiming that in this lawsuit that they owe some money for the portion of the time that they didn't provide services? No. The services that LAUSD provided Mr. Garcia while he was in jail were intended also to make up for the services he was not provided. Whether that was accomplished or not is a different question. But they're square with Mr. Garcia? Yes. So going back to some of the practical concerns, in addition to CD's obligations, there is an ability amongst districts even to contract amongst themselves. So in LAUSD's example of the student from Sacramento who maybe goes to Irvine and commits a crime, it's entirely possible, entirely contemplated by the statutory scheme, for the Sacramento school district to contract with any number of agencies, including an Irvine school district, including private providers down there, potentially even including the California Department of Education to provide those services. And so I think when the court at the beginning of the argument identified this as primarily a financial consideration, I think that's to some extent true. Because it doesn't necessarily mean under 56041 that somebody from Sacramento has to get on a plane and travel down to Irvine to actually provide those services. But instead what it means is that Sacramento is financially responsible. And however it arranges to do that is entirely within the statutory scheme and is provided for explicitly by both federal and state statutes. I need to have a break at this time. You're just about out of time anyway. I see I have just a few seconds. Okay, thank you. We'll stand and recess then for just a few minutes. Thank you. All rise. The cause is not my granddaughter but Bob. So I'll be back as soon as I can. All rise. Thank you everybody. I'm very sorry about the interruption. Judge Fletcher's husband fell ill and she had to leave, so we'll proceed without her. She will listen to the tape. She's going to listen to the tape and get back up to speed. Ms. Parks, you had a few seconds left. Were you done? Yeah, I think it's fine. Okay, thank you. We're back then to Mr. Green. Thank you very much. I have three minor points to make. The first on the mootness issue, I think this is probably a classic capable of repetition yet evading review. Not only is it possible, we actually have a class action pending on the issue, so I think it clearly is capable. The same legal issues. Very similar. I mean, there's some overlapping issues because they're arguing about other responsibilities, even if one were to accept the current interpretation, they still feel the state has oversight responsibility, et cetera. So that's number one. The state is a party in the class action. Correct, the state's a party. So that's why I think they're arguing. Well, why would it evade review? It sounds like it would be teed up for review. That's true. That's true. That's another procedural possibility where you could just say, I'm going to defer until that case gets to us on appeal. It's possible. I haven't really thought through the procedural rule on that, but I think it is possible. But the idea that the state is not in the loop on what's going on in this case. The second point is, this was to address Judge Fletcher's point, but if she hears it on the tape, about the construction of the statute. If you look at page two of our reply brief, we quote from the student's very own argument, the first go-round before OAH, this is a brief quote, but basically the student says that the construction that has since been adopted by the court would produce the unworkable, nonsensical, and absurd result that many different districts would be responsible for various inmates' programs, et cetera. So they started with the very argument that we're making, and now they're forced to defend what was at the time indefensible. Let me ask you something. LAUSD has some clout, I would say, some clout with the California legislature. Are there efforts going on to get the legislature to look at this and enact some legislation that would solve this problem? Absolutely. From the very beginning, we were hoping to do that. There's only so much I can say on the record, Your Honor, but I think the representatives of CDE were mindful of the problem, but it is not that easy sometimes to get things through the legislature, and especially at this stage where there's going to be all sorts of finger-pointing about who's going to pay and budgets are tight, I think that's probably part of the problem. Final point, again, I'm not advocating necessarily that the court certify to the Supreme Court, but I did want to point out that in the Orange County case where the Supreme Court declined to hear it, I believe that the issue that they were asked to review involved a statute that had since changed, and it's possible that might have been why the Supreme Court was not interested in hearing that. Well, they've also began rejecting many of our requests for certification. Well, the first time, I think, as I recall, it might have been in the standing case involving the Prop 8, and then maybe they saw, well, we don't want to have too many of these. But this is one that certainly I think would be of statewide significance. So with that, thank you very much, Your Honor. Thank you, Mr. Green. Ms. Parks, thank you again. I apologize for the interruption of your argument and matters submitted.
judges: Fletcher, Silverman, Wardlaw